**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **STEWART LIFF**, *et al.*,<br><br>  **Plaintiffs,**<br><br>  v.<br><br>**OFFICE OF THE INSPECTOR GENERAL FOR THE U.S. DEPARTMENT OF LABOR**, *et al.*,<br><br>  **Defendants.** | Civil Action No. 14-1162 (JEB) |

**<u>MEMORANDUM OPINION</u>**

In poker parlance, sometimes it's better to fold at the turn than to toss in more chips to see the river.  After a round of motion-to-dismiss briefing, the Court largely sided with Plaintiffs Stewart Liff and his eponymous business, Stewart Liff & Associates, Inc., leaving intact their procedural-due-process claim against several government agencies and their <u>Bivens</u> claim against those agencies' officers.  The gist of Liff's Complaint was that Defendants had sullied his good name and precluded him from his chosen profession after they investigated and then outed him for wasting government resources while serving as a public-sector consultant.  The Court, in allowing the claims to proceed, deferred ruling on Defendants' statute-of-limitations defense to the <u>Bivens</u> cause of action.  Because of less-than-comprehensive briefing on a particularly thorny issue, the Court left it on the table.

The Government now requests that the Court flip over that last card.  In Defendants' Motion to Reconsider, they ask to have their limitations-period argument resolved.  Like many a bettor, seeing another card does not improve the outcome, as the Court ultimately denies the Motion and concludes that at least some of Liff's <u>Bivens</u> claim is timely.

1

## I.   Background

As the present Motion concerns an issue addressed in the prior Opinion on Defendants'
Motion to Dismiss, the Court presumes that the reader is familiar with that decision.  See Liff v.
OIG for the U.S. Dep't of Labor, 156 F. Supp. 3d 1 (D.D.C. 2016).

### A.   The Case Unfolds

As described there, Liff was a civil-service retiree who then pursued a follow-on career in
government consulting.  Id. at 5-6.  In late 2009, through a contact at the U.S. Department of
Labor — Ray Jefferson — Liff and his company began work as a subcontractor on various DOL
projects.  Id. at 6.  (For ease of reference, the Court will refer to Liff in the singular, although his
company is also a Plaintiff.)  Then, in 2011, he started consulting with the Office of Personnel
Management.  Id.

These relationships were short lived.  Following an eight-month investigation into
contracting improprieties, DOL's Office of Inspector General issued a report in July 2011,
concluding that Jefferson had disregarded federal-procurement rules, ethics principles, and fiscal
responsibilities in retaining Liff.  Id.  That report also effectively implied that the government
had not obtained good value for Plaintiff's services.  Id. at 7.  The bad news streamed forth, as
OIG then held a press conference and issued a follow-up memorandum reiterating much of the
same allegations; then, in early 2013, OPM proceeded with its own investigation, report, and
memorandum.  Id. at 7-9.  During and after this time, Plaintiff lost various federal-government
clients and speaking opportunities, and his consulting revenue dwindled to a tiny fraction of what
it had been.  Id.

In July 2014, Liff and Jefferson filed separate lawsuits, which were designated in this
Court as related cases.  See Jefferson v. Harris, No. 14-1247 (D.D.C.).  As for Liff, he asserted in

Count I that the agencies at issue had degraded his professional reputation, which effectively

barred him from government contracting, without adequate process as guaranteed by the Fifth

Amendment's Due Process Clause.  In Count II, he brought similar claims in a damages action

against several individual officers pursuant to Bivens v. Six Unknown Named Agents of Fed.

Bureau of Narcotics, 403 U.S. 388 (1971).  (Last, in Count III, he asserted the same variety of

process violations against the agency Defendants under the Administrative Procedure Act,

although those claims would later be dismissed.)

 B.  Motion-to-Dismiss Proceedings

 Defendants then sought to dismiss the Complaint.  The Government first argued that

Plaintiff had not staked out a plausible procedural-due-process claim that Defendants had

deprived him of any liberty interest without notice and an opportunity to be heard on the issue.

Specifically, Defendants asserted that Count I housed only a defamation claim, which alone

would be insufficient to trigger due-process protections.  See ECF No. 17 (Motion to Dismiss) at

9 (citing Siegert v. Gilley, 500 U.S. 226, 233 (1991) ("[I]njury to reputation by itself [is] not a

'liberty' interest protected under the [Due Process Clause.]")).

 Although Defendants then acknowledged that an individual could bring a so-called

"reputation-plus claim," they argued, among other things, that such a claim was only actionable

if reputational damage arose from defamatory statements and was accompanied by an adverse

employment action, such as termination (the "plus" element).  Id. at 10-12.  Neither was present

here, they contended.  Id.

 In response, Plaintiff attempted to clear the air.  Liff explained that two types of

procedural-due-process claims were available to litigants in his position: reputation-plus and

stigma-plus.  See ECF No. 20 (MTD Opposition) at 7; see also O'Donnell v. Barry, 148 F.3d

1126, 1140-41 (D.C. Cir. 1998) (differentiating between the two theories).  Although Defendants had framed the action as a reputation-plus case, Liff argued that his "due process claims are grounded principally in the 'stigma-plus' line of cases."  MTD Opp. at 8, 15-23.  The "plus" in the latter cases was not any adverse employment action but rather that a government-imposed stigma had effected a tangible change in the individual's status under the law, which stigma effectively closed the gates on his future career opportunities.  In making this clarification, Plaintiff also retorted that such "stigma-plus claims do not require defamatory statements."  Id. at 19 n.5.

Following this briefing, the Court sided with Liff's theory of the case and determined that he had made out a procedural-due-process claim against the agency Defendants.  See Liff, 156 F. Supp. 3d at 10-12.  The Court first concluded that the investigations and statements relating to Liff's services sufficiently suggested a stigma — that is, "a pall had been cast over Plaintiffs' honesty and integrity."  Id. at 12.

Recognizing that such a reputational cloud, without more, was not enough, the Court then proceeded to analyze whether this stigma had worked a "tangible change in status" for Liff.  Id. In the Court's view, Liff had alleged enough: OPM's actions had effectively barred him from future work with the agency, as Plaintiff contended that OPM "took steps" to immediately conclude business ties with him, canceled an outstanding task order, and suggested Liff "would not be used again by OPM for consulting services."  Id. at 14 (quoting Compl., ¶ 50).  As to DOL, the Court commented that it was plausible that the agency's public report put Plaintiff out of business, as his disqualification from DOL work could affect his overall employability, given that other agencies might need to investigate his past performance before they retained him.  Id. at 15-16 (citing 48 C.F.R. § 9.105-1(c)(5)).

As to Liff's <u>Bivens</u> claim that the individual Defendants should be liable for violating his procedural-due-process rights, the Court addressed a number of defenses.  It first disposed of the Government's qualified-immunity position and then deferred ruling on its argument that no <u>Bivens</u> remedy existed for reputational-harm cases.  <u>Id.</u> at 18-21.

As particularly relevant here, the Court also held off on deciding Defendants' statute-of-limitations defense.  The Government argued that the D.C. Circuit had, in <u>Doe v. DOJ</u>, 753 F.2d 1092 (D.C. Cir. 1985), held that in reputation-based procedural-due-process actions, the District of Columbia's one-year limitations period for defamation applied.  Plaintiff retorted that, four years after <u>Doe</u>, the Supreme Court in <u>Owens v. Okure</u>, 488 U.S. 235 (1989), had scaled back on state-law borrowing of particular statutes of limitations and instead instructed courts to rely on the residual period, which was three years in the District.  Because the briefing was lacking on the continuing vitality of <u>Doe</u>, this Court set aside the statute-of-limitations defense for a later time.  <u>See</u> <u>Liff</u>, 156 F. Supp. 3d at 18.

C.  <u>Further Procedural Developments</u>

What followed from that Opinion procedurally is somewhat tricky.  First the individual Defendants filed the present Motion to Reconsider the <u>Bivens</u> statute-of-limitations question, asking the Court to <u>decide</u> the issue in the first instance.  On February 25, 2016, before the Court could resolve the Motion, however, they filed a Notice of Appeal to challenge the Court's decision on qualified immunity.  <u>See</u> ECF No. 29 (Notice of Appeal); <u>see also</u> No. 16-5045 (D.C. Cir.).  This Court stayed the case pending that appeal.

The Government swiftly requested a lift of the stay so that this Court could resolve the instant Motion.  Following further briefing on the stay question, this Court obliged.  <u>See</u> <u>Liff v. OIG for the U.S. Dep't of Labor</u>, No. 14-1162, 2016 WL 4506970 (D.D.C. Aug. 26, 2016).  In

doing so, it reasoned that a resolution could benefit the parties and ultimately expedite the proceedings. Id. at *3. If the Court now ruled on the limitations-period question, it might be possible for the Court of Appeals to resolve both the already-appealed qualified-immunity issue and the timeliness issue together, as opposed to separately. See id. (Given the resolution here, however, that court may or may not consider the limitations question on an interlocutory appeal of immunity.)

Shortly after the Court signaled that it would rule on the Motion to Reconsider, the D.C. Circuit also held the government's appeal in abeyance until such resolution. See ECF No. 43. All litigation in this case, then, is on hold until the statute-of-limitations question is resolved once and for all.

Before answering it, the Court notes a few other developments. While this case was wending its way through the procedural maze, this Court resolved a similar motion to dismiss in the related lawsuit of Liff's DOL contact, Jefferson. Jefferson had also asserted a due-process violation against the agencies and a Bivens claim against their officers. In addressing the Bivens piece, the Court first differentiated between the two legal theories — reputation-plus vs. stigma-plus — that could establish a reputation-based due-process violation. Jefferson v. Harris, 170 F. Supp. 3d 194, 204-06 (D.D.C. 2016). Although Jefferson had pled both theories (unlike Liff, who advanced only the latter), the Court concluded that only his reputation-plus claim was sufficiently supported by factual allegations. Id. at 205.

As to this cause of action, the Court took the Government's statute-of-limitations defense head on. It held that "[i]n Doe — a 'reputation plus' case like this one — the D.C. Circuit 'borrowed' the District of Columbia's one-year limitations period for defamation actions." Id. at 213 (citing Doe, 753 F.2d 1092). This Court then concluded that Doe had not been overruled,

and so the one-year limitations bar applied to Jefferson's reputation-plus claim, rendering it untimely.  Id. at 213-14.

In so ruling, this Court also explained why it was necessary, as a legal matter, to reach the statute-of-limitations question in Jefferson but not in Liff: "Although this Court was presented with this question in Liff, it found no need to grapple with Doe's precise holding; this was because Doe's limitations ruling was specific to 'reputation plus' claims, whereas Liff presented only 'stigma plus' claims, which do not require proof of governmental defamation."  Id. at 212. In other words, it was imprudent in Liff to decide the continuing power of Doe, 753 F.2d 1092, which did not seem to squarely address stigma-plus claims.

In filing the current Motion to Reconsider, the Government argues that Doe's one-year limitations period does apply to Liff's stigma-plus claims.  That issue is now ripe.

## II.    Legal Standard

Defendants bring the instant Motion under Federal Rules of Civil Procedure 59(e) and 54(b).  Rule 59(e) permits a party to move to alter or amend a judgment by filing a motion within 28 days of the entry of judgment.  Despite Defendants' insistence on that Rule's relevance, it is a poor fit here.  The Court has not entered judgment here at all — indeed, it has not even decided the statute-of-limitations question.  Because what the Government asks the Court to revisit is an issue lingering from a past decision, Rule 54(b) governs.  That Rule provides that "any order or other decision . . . that adjudicates fewer than all the claims . . . may be revised at any time before the entry of a judgment adjudicating all the claims."

In assessing the Rule 54(b) standard, the D.C. Circuit has explained:

> Rule 54(b)'s approach to the interlocutory presentation of new arguments as the case evolves can be more flexible, reflecting the "inherent power of the rendering district court to afford such relief from interlocutory judgments as justice requires."  Greene v. Union

> Mutual Life Ins. Co. of America, 764 F.2d 19, 22 (1st Cir. 1985)
> (Breyer, J.) (ellipsis omitted) (quoting Dow Chem., USA v.
> Consumer Prod. Safety Comm'n, 464 F. Supp. 904, 906 (W.D. La.
> 1979)); see Capitol Sprinkler Inspection, Inc. v. Guest Servs., Inc.,
> 630 F.3d 217, 227 (D.C. Cir. 2011) (approving of Greene's "as
> justice requires" standard); Cobell v. Norton, 224 F.R.D. 266, 272
> (D.D.C. 2004) ("[T]he standard for reconsideration of interlocutory
> orders under Rule 54(b) is distinct from the standard applicable to
> [Rule 59(e) ] motions for reconsideration . . . . [I]t is clear that courts
> have more flexibility in applying Rule 54(b) than in determining
> whether reconsideration is appropriate under Rule 59(e).") (internal
> quotation marks omitted).

Cobell v. Jewell, 802 F.3d 12, 25-26 (D.C. Cir. 2015).

The "as justice requires" standard may be met, for example, where the court has patently

misunderstood a party, made a decision outside the adversarial issues presented by the parties,

erred not in reasoning but in apprehension of the relevant issues, or failed to consider a

significant change in the law or facts since its decision.  See Cobell, 224 F.R.D. at 272.  "These

considerations leave a great deal of room for the court's discretion and, accordingly, the 'as

justice requires' standard amounts to determining 'whether [relief upon] reconsideration is

necessary under the relevant circumstances.'"  Lewis v. District of Columbia, 736 F. Supp. 2d

98, 102 (D.D.C. 2010) (quoting Cobell, 224 F.R.D. at 272).  A court's discretion under Rule

54(b), however, is "limited by the law of the case doctrine and subject to the caveat that where

litigants have once battled for the court's decision, they should neither be required, nor without

good reason permitted, to battle for it again."  Singh v. George Washington Univ., 383 F. Supp.

2d 99, 101 (D.D.C. 2005) (internal citations omitted).

## III.    Analysis

Defendants now ask the Court to resolve the timeliness of Plaintiff's Bivens claim for

relief against the individual officers.  Although the parties "have once battled for the court's

decision" on this question, id., the Court issued none.  Instead, the Liff Opinion left the statute-

of-limitations question unanswered, both because briefing was thin on whether a central D.C.

Circuit opinion (Doe) remained good law and because it seemed unnecessary at the time to

resolve that case's vitality.  See Liff, 156 F. Supp. 3d at 18; see also Jefferson, 170 F. Supp. 3d at

212.

Now with the benefit of further briefing, this Court obliges Defendants' request to

consider whether a one-year or three-year statute of limitations applies to Liff's Bivens action

against individual officers for their stigma-plus deprivation of Plaintiff's due-process rights.

This question is dispositive: If a one-year clock controls, Liff's claims would be untimely; if a

three-year clock controls, his claims would survive.  See Liff, 156 F. Supp. 3d at 17 (recognizing

all government actions took place over a year before this suit); see also Motion to Dismiss at 16-

17 (acknowledging limitations period started running on July 21, 2011, less than three years prior

to the Complaint, which was filed July 10, 2014).

The Court first elaborates on Bivens timeliness rules generally before exploring a

possible exception in the realm of defamation-based claims and applying that exception.

A. *Bivens* Statute of Limitations

Federal actions — such as those against individual officers based on Bivens — often lack

independent federal statutes of limitations.  See DelCostello v. Int'l Bhd. of Teamsters, 462 U.S.

151, 158 (1983).  Yet this does not mean the timeliness analyses of those cases are unguided.

For some time, courts have instead "'borrow[ed]' the most suitable statute or other rule of

timeliness from some other source," typically "the most closely analogous" state-law rule.  Id.;

Loumiet v. United States, 828 F.3d 935, 947 (D.C. Cir. 2016) ("When a federal action contains

no statute of limitations, courts will ordinarily look to analogous provisions in state law as a

source of a federal limitations period.") (quoting Doe, 753 F.2d at 1114).

Such state-law borrowing can be tricky.  Cases resolving § 1983 claims help show why that is so, and they prove instructive since <u>Bivens</u> claims are generally governed by the same statute of limitations.  <u>See</u> <u>Jones v. Kirchner</u>, 835 F.3d 74, 2016 WL 4488149, at *4 n.7 (D.C. Cir. 2016); <u>see also</u> <u>Butz v. Economou</u>, 438 U.S. 478, 500 (1978) ("[I]n the absence of congressional direction to the contrary, there is no basis for according to federal officials a higher degree of immunity from liability when sued for a constitutional infringement as authorized by <u>Bivens</u> than is accorded state officials when sued for the identical violation under § 1983."); <u>but cf.</u> <u>Earle v. District of Columbia</u>, 707 F.3d 299, 303 n.3 (D.C. Cir. 2012) (only discussing limitations period for § 1983 claim because <u>Bivens</u> claims were not raised on appeal).

In the § 1983 context, the Supreme Court has described how, historically, "[t]he practice of seeking state-law analogies for particular § 1983 claims bred confusion and inconsistency in the lower courts and generated time-consuming litigation."  <u>Owens v. Okure</u>, 488 U.S. 235, 240 (1989); <u>see</u> <u>Wilson v. Garcia</u>, 471 U.S. 261, 266 (1985) (noting "conflict, confusion, and uncertainty concerning the appropriate statute of limitations").  Borrowing could be unpredictable because mere "artful pleading" could make a constitutional claim sound in contract or tort or statutory law, leading to disparate timeliness rulings for causes of action that were substantively the same.  <u>Owens</u>, 488 U.S. at 240; <u>see</u> <u>Wilson</u>, 471 U.S. at 272-73 ("Almost every § 1983 claim can be favorably analogized to more than one of the ancient common-law forms of action . . . .").

Luckily, that era is over.  Acknowledging these practical difficulties, in 1985, the Supreme Court in <u>Wilson</u> "expressly rejected the practice of drawing narrow analogies between § 1983 claims and state causes of action."  <u>Owens</u>, 488 U.S. at 248 (citing <u>Wilson</u>, 471 U.S. at 272).  That practice had become too unpredictable, and so the Supreme Court agreed on

adopting, for statute of-limitations purposes, "a simple, broad characterization of all § 1983 claims." Wilson, 471 U.S. at 272. Wilson then concluded that those claims — and, by extension, Bivens actions — would henceforth be governed by each state's personal-injury limitations law. See id. at 280.

Wilson was not the final word, however, as that decision left unsolved another conundrum of what would happen when several personal-injury periods might apply. Not surprisingly, many states prescribed rules for different "enumerated intentional torts" as well as a period for "residual" or general torts. Owens, 488 U.S. at 241-42; see Wilson, 471 U.S. at 286 (O'Connor, J., dissenting) (describing how opinion left open the question of what might happen where "not one but two periods . . . govern various injuries to personal rights"). In 1989, the Supreme Court in Owens weighed whether, in these situations, courts should search for the nearest intentional-tort analogue or instead rely on each state's general personal-injury period. See 488 U.S. at 242-50. Sensing that courts were slipping back to the period where a multitude of disparate time bars reigned and litigants could not predict which to apply, Owens clarified that when "state law provides multiple statutes of limitations for personal injury actions," courts should borrow the "general or residual statute for personal injury actions." Id. at 250.

In the District of Columbia, this rule plays out simply. The District has two statutes of limitations applicable to personal-injury claims: a one-year period for enumerated intentional torts, D.C. Code § 12-301(4), and a three-year residual period for all other torts. Id. § 12-301(8); see Earle, 707 F.3d at 305. In the § 1983 context, the D.C. Circuit has held that, faced with these two options, courts must "apply the three-year residual statute of limitations" found in § 12-301(8). Earle, 707 F.3d at 305; see Owens, 488 U.S. at 250 n.12 (observing that, under its standard, the District's general personal-injury provision would apply).

Before and after <u>Wilson</u> and <u>Owens</u>, the Court of Appeals has likewise recognized that the generally appropriate limitations period for <u>Bivens</u> claims is three years.  <u>See</u> <u>Bond v. DOJ</u>, No. 12-5296, 2013 WL 1187396 (D.C. Cir. Mar. 14, 2013) (*per curiam*); <u>Banks v. Chesapeake & Potomac Tel. Co.</u>, 802 F.2d 1416, 1429 (D.C. Cir. 1986); <u>Hobson v. Wilson</u>, 737 F.2d 1, 32 (D.C. Cir. 1984); <u>Richards v. Mileski</u>, 662 F.2d 65, 68 n.7 (D.C. Cir. 1981); <u>Eikenberry v. Callahan</u>, 653 F.2d 632, 634-35 (D.C. Cir. 1981); <u>see also</u> <u>Loumiet v. United States</u>, 968 F. Supp. 2d 142, 149 (D.D.C. 2013); <u>McDonald v. Salazar</u>, 831 F. Supp. 2d 313, 320 (D.D.C. 2011); <u>Lederman v. United States</u>, 131 F. Supp. 2d 46, 62 (D.D.C. 2001).

B.   Exception to the Three-Year Period

There is only one arguable exception to the three-year period in this circuit.  In the gap years between <u>Wilson</u> and <u>Owens</u> — *i.e.*, 1985–1989 — the D.C. Circuit in <u>Banks</u> held that the alternative one-year § 12-301(4) limitations period for intentional torts maintained its hold "for constitutional torts specifically listed in the statute."  802 F.2d at 1428; <u>accord</u> <u>Bame v. Clark</u>, 466 F. Supp. 2d 105, 108 (D.D.C. 2006) (repeating rule without citing or analyzing effect of <u>Owens</u>).  That statute restricts to one year the time to file suit "for libel, slander, assault, battery, mayhem, wounding, malicious prosecution, false arrest or false imprisonment."  D.C. Code § 12-301(4).  So, for instance, a "constitutional assault" claim would need to be brought within one year of when that claim accrued.  <u>McClam v. Barry</u>, 697 F.2d 366, 371-72 (D.C. Cir. 1983), <u>overruled on other grounds by</u> <u>Brown v. United States</u>, 742 F.2d 1498 (D.C. Cir. 1984) (*en banc*); <u>accord</u> <u>Wormley v. United States</u>, 601 F. Supp. 2d 27, 35 (D.D.C. 2009).

Relevant here is another enumerated intentional tort: defamation.  In <u>Doe</u> — issued before <u>Wilson</u> and <u>Owens</u> — the D.C. Circuit addressed whether to apply the one-year period to "constitutionally based defamation actions."  753 F.2d at 1115.  The answer, then, was easy, as

the Circuit had already applied the one-year rule in a prior *en banc* decision.  Id. (citing Church

of Scientology v. Foley, 640 F.2d 1335 (D.C. Cir. 1981) (*per curiam*) (*en banc*)).  Doe explicitly

recognized, however, that the Supreme Court was then considering Wilson, 471 U.S. 261, which

very well could "offer us further guidance."  Id. at 1115 n.30.

No doubt Wilson and then Owens worked a sea change in state-law-borrowing law.

Owens, in particular, weighed the "intentional torts approach" and the "general or residual

personal injury approach," and ultimately favored the latter.  See 488 U.S. at 242.  Yet, despite

this instruction, the continuing vitality of the line of cases that applies the District's one-year

period for intentional torts — the holding in Banks, and exceptions for assault and defamation

laid out in McClam and Doe, respectively — has not been seriously questioned in the Bivens

context.  But cf. Earle, 707 F.3d at 305 (choosing District's residual period in § 1983 context);

Carney v. Am. Univ., 151 F.3d 1090, 1096 (D.C. Cir. 1998) ("The Supreme Court has held that

in states with multiple statutes of limitations, claims under section 1983 are governed by the

residual or general personal injury statute of limitations (like section 12-301(8)), rather than the

statute of limitations for enumerated intentional torts (like section 12-301(4)).").

As the Government dutifully points out, it is not this Court's role to stray from binding

precedents that have not been clearly discarded.  The Court must instead "attempt to reconcile all

of the judgments binding upon it if possible, [unless] holdings of the Supreme Court and the

D.C. Circuit are irreconcilable."  Lee v. United States, 570 F. Supp. 2d 142, 149-50 (D.D.C.

2008); La. Envt'l Action Network v. Browner, 87 F.3d 1379, 1383 (D.C. Cir. 1996).  Here,

fortunately, reconciliation is possible.

This Court observed in Jefferson that, because the one-year rule has not been explicitly

overruled in the Bivens context, the Doe exception remains binding in those actions.  See 170 F.

Supp. 3d at 212-14.  But in light of precedent expounding on federal courts' interests in predictability and uniformity, its scope must be narrow and defined.  See Owens, 488 U.S. at 243 (expressing need for "ease and predictability").  That is, the three-year residual period is clearly favored, and this Court will not apply a different limitations period unless the facts of this case fall squarely within the ambit of Doe's one-year period for "constitutionally based defamation actions."  753 F.2d at 1115.

C.  Applying the *Doe* Exception

To presage the conclusion, as Liff's case is not entirely such a defamation action, at least part of his Bivens count is timely under the three-year statute of limitations.  Reaching that result requires further delving into the structure of reputation-based procedural-due-process actions and why Liff's case and Doe do not wholly overlap.

All reputation-based claims depend on some deprivation of liberty — in general terms, a constitutionally protected interest in one's good name or in being able to pursue one's chosen profession — without procedures that were constitutionally sufficient.  See Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 572-73 (1972).  Even so, such actions are not monolithic. As mentioned earlier, over the years, as the case law has developed in this circuit, two independent legal theories for how such deprivations occur have crystallized.  See McCormick v. District of Columbia, 752 F.3d 980, 987 (D.C. Cir. 2014); Hutchinson v. CIA, 393 F.3d 226, 231 (D.C. Cir. 2005); O'Donnell v. Barry, 148 F.3d 1126, 1139-40 (D.C. Cir. 1998); see also DOE v. Rogers, 139 F. Supp. 3d 120, 159 (D.D.C. 2015).

The first is known as a "reputation-plus" claim.  That claim is available only where the plaintiff asserts "defamation that is 'accompanied by a discharge from government employment or at least a demotion in rank and pay.'"  O'Donnell, 148 F.3d at 1140 (quoting Mosrie v. Barry,

718 F.2d 1151, 1161 (D.C. Cir. 1983)).  "This theory makes the termination [or demotion]

actionable only where the terminating [or demoting] employer has disseminated the reasons for

the termination and such dissemination is defamatory."  McCormick, 752 F.3d at 988.

The second theory is known as a "stigma-plus" or "stigma or disability" claim.  This type

of action arises when the government imposes "a stigma or other disability that foreclose[s] [the

plaintiff's] freedom to take advantage of other employment opportunities."  O'Donnell, 148 F.3d

at 1140 (quoting Roth, 408 U.S. at 573).  The theory is, in essence, that some government action

might impose such a harsh taint that it interferes with an individual's "right to follow a chosen

trade or profession."  Cafeteria Restaurant Workers Union, Local 473 v. McElroy, 367 U.S. 886,

895-96 (1961).

Such a claim varies in two ways from its reputation-plus counterpart.  First off, the types

of official actions that are recognized are somewhat broader in the stigma-plus context.  For such

a claim to be actionable, the government must impose so great a constraint on an individual's

future employment opportunities that it "involve[s] a tangible change in status" — that is, it must

amount to "an adjudication of status under law."  Kartseva v. Department of State, 37 F.3d 1524,

1527 (D.C. Cir. 1994); O'Donnell, 148 F.3d at 1141 ("[A] plaintiff who . . . seeks to make out a

claim of interference with the right to follow a chosen trade or profession that is based

exclusively on reputational harm must show that the harm occurred in conjunction with, or

flowed from, some tangible change in status.").  Although a tangible change in status may,

incidentally, flow from an adverse employment action (such as a termination or demotion) that

causes disrepute, it need not.  See Kartseva, 37 F.3d at 1528; see also O'Donnell, 148 F.3d at

1141.  Instead, a plaintiff may show that the "State's action formally or automatically exclude[d]

[her] from work on some category of future State contracts or from other government

employment opportunities" or that the "State's action does not have this binding effect, but

nevertheless has the broad effect of largely precluding [her] from pursuing her chosen career."

Kartseva, 37 F.3d at 1528; see GE Co. v. Jackson, 610 F.3d 110, 121 (D.C. Cir. 2010).

As a second point, in stigma-plus cases, official speech is not necessarily implicated.

That type of claim "differs from [a reputation-plus claim] in that it does not depend on official

speech, but on a continuing stigma or disability arising from official action."  O'Donnell, 148

F.3d at 1140; see Trifax Corp. v. District of Columbia, 314 F.3d 641, 644 (D.C. Cir. 2003);

Jefferson, 170 F. Supp. 3d at 205.  That is, an agency's purely "internal recommendation[s]"

might disqualify an individual from future government work and give rise to a claim — no

defamatory statement to a third party is required.  Kartseva, 37 F.3d at 1530 (emphasis added);

see Trifax, 314 F.3d at 644 (noting that due-process cases regarding "formal exclusion from a

chosen trade or profession" are not directly "analogous to common-law defamation" cases); see

also Blodgett v. Univ. Club, 930 A.2d 210, 222 (D.C. 2007) (requiring, as element of

defamation, publication to a third party).

The D.C. Circuit case of Kartseva, 37 F.3d 1524, provides an instructive example.  In that

case, the plaintiff, Kartseva, was a Russian translator who had worked exclusively in

government-related employment.  Id. at 1525.  While working for a federal-government

contractor, the State Department subjected her to a security-related background check —

involving a questionnaire, fingerprinting, and investigations into personnel records.  Id. at 1525-

26.  State informed the contractor that Kartseva had flunked the check, and the contractor then

terminated her.  Id. at 1526.  In addressing her suit, the D.C. Circuit first examined whether State

had formally disqualified her from government employment and, alternatively, whether it had

broadly precluded her from her chosen career as a translator.  In finding it plausible that the

Department had officially barred her by failing her on her security check, the Court of Appeals described her claim as resting not on State's statement to the contractor (which arguably could count as defamatory), but on "three internal State memoranda that discuss [her] disqualification." Id. at 1528.  Likewise, as to whether Kartseva had been broadly precluded from her field, the D.C. Circuit acknowledged that the disqualification stemming from internal transmissions "might be sufficiently stigmatic" if it, in effect, "encompasse[d] all State contracts."  Id. at 1530. In other words, her claim did not, as an inherent matter, require statements to third parties.

Liff's claim is also of this stigma-plus variety.  See Jefferson, 170 F. Supp. 3d at 212. During motion-to-dismiss briefing, he dropped any reputation-plus pretense and asserted that his "due process claims are grounded principally in the 'stigma-plus' line of cases."  MTD Opp. at 8, 15-23.  Nor could a reputation-plus action have survived, as Liff nowhere pled that the government was his employer and that it had terminated or demoted him.  See Liff, 156 F. Supp. 3d at 6-9.  It appears, instead, that all of his claims flowed from a drastic loss of business going forward.  That is why this Court examined the elements of a stigma-plus claim — i.e., whether his reputation had been damaged (the stigma) and whether that had led to a tangible change in status (the plus) — in considering Defendants' Motion to Dismiss.  Id. at 11-13.

Even though Plaintiff's Bivens action rests not on reputation-plus law but on the stigma-plus theory (which does not require defamation), the Government nonetheless argues that Doe applies to both types of claims.  See Reply at 1-3.  In other words, Defendants contend that both species of due-process actions are "constitutionally based defamation actions."  Doe, 753 F.2d at 1115.  If that were so, then Doe's one-year limitations period would apply, and Liff's claim would be untimely.

The language in Doe, admittedly, is tough to parse. Its focus was on defamation, not on the reputation/stigma phenotypes. There, the D.C. Circuit found, "The gist of Doe's claims against the individual defendants is that they disseminated false and defamatory statements to other attorneys, statements which 'destroyed her reputation as a sober and serious person.'" Doe, 753 F.2d at 1114 (quoting her complaint). That is, Doe "allege[d] that the public dissemination of those charges — not the mere fact of her termination — has stigmatized her professional reputation and foreclosed future employment opportunities." Id. at 1110. That case could therefore easily be analogized to "an ordinary defamation claim." Id. at 1114-15 (labeling case as merely a "constitutionally based defamation action[]"). As another district-court judge emphasized, the claim for relief in Doe was specifically based on allegations regarding "the [government's] action and the subsequent spreading of the charges by [government] officials.'" De Sousa v. Dep't of State, 840 F. Supp. 2d 92, 110 (D.D.C. 2012) (emphasis in De Sousa) (quoting Doe, 753 F.2d at 1098).

Although this defamation-based language seems closer to the reputation-plus than the stigma-plus end of the spectrum, the Court must bear in mind that Doe was penned years before that modern-day duality was honed in a line of cases. E.g., McCormick, 752 F.3d at 987; Hutchinson, 393 F.3d at 231; O'Donnell, 148 F.3d at 1139. Even today, those theories are "not always distinct." McCormick, 752 F.3d at 988. While courts have routinely used Doe's language to derive the elements of reputation-plus claims, see, e.g., Jefferson, 170 F. Supp. 3d at 205; McGinnis v. District of Columbia, 65 F. Supp. 3d 203, 221 (D.D.C. 2014), the Government rightly points out that some of its language has also served as the progenitor of stigma-plus claims. See GE, 610 F.3d at 122 (citing Doe to lay out elements of stigma-plus claim); see also Aref v. Lynch, 833 F.3d 242, 258 n.11 (D.C. Cir. 2016) (similar). To add to the confusion, the

Doe plaintiff's "alleg[ations] that the public dissemination of those charges — not the mere fact

of her termination — has stigmatized her professional reputation and foreclosed future

employment opportunities" seem to meet the elements of either claim.  Doe, 753 F.2d at 1110

("Doe was discharged from government employment amidst stigmatizing allegations which have

effectively foreclosed future employment opportunities with the government as well as private

employers.").

      This Court cannot deny that Doe's language somewhat blends the two theories.  Yet the

Government's reading — that Doe applies to all stigma-plus claims as well as reputation-plus

claims — appears too broad an interpretation.  The case's statute-of-limitations language focused

strictly on "defamatory statements."  Id. at 1114; see id. at 1114-15 (calling plaintiff's claim "an

ordinary defamation claim" and a "constitutionally based defamation action[]").  Although that

plaintiff's potential stigma-plus claim may have hinged on defamation, as explained, courts now

recognize a genus of stigma-plus actions that does not involve official speech.  See Trifax, 314

F.3d at 644; O'Donnell, 148 F.3d at 1140-41; Kartseva, 37 F.3d at 1528; see also Jefferson, 170

F. Supp. 3d at 205.

      The best reading of Doe, therefore, is that it applies to all reputation-plus claims and to

stigma-plus suits based on defamation.  Considering that the "practice of drawing narrow

analogies between [certain federal] claims and state causes of action" is now discouraged, the

Court will not guess that the Doe panel would have applied a one-year bar to stigma-plus claims

that do not involve official speech.  Owens, 488 U.S. at 248 (citing Wilson, 471 U.S. at 272).

Indeed, even if the Court were to so surmise, it appears unlikely that Doe would have crafted a

holding so broad as to sweep in non-defamation claims.  Courts borrow state intentional-tort

limitations periods only "for constitutional torts specifically listed in the statute."  Banks, 802

F.2d at 1428 (emphasis added).  Although D.C. Code § 12-301(4) includes "slander" and "libel" as intentional torts, it lists no reputational actions where defamation is absent.

From here, Defendants retort that Liff, as a factual matter, brings <u>only</u> a defamation-based stigma-plus claim.  <u>See</u> Reply at 6-7.  In its last Opinion, the Court acknowledged that much of Liff's allegations rested on DOL's and OPM's "defamation."  <u>Liff</u>, 156 F. Supp. 3d at 12.  Descriptively, this remains true.  But that is not all there is to his Complaint, if it is to be read in the most favorable light.

Instead, part of Liff's claim is that he — much like the plaintiff in <u>Kartseva</u> — was investigated by OPM and DOL and flunked the investigations, ultimately barring or precluding him from his chosen profession of government consulting.  That is, his claim rests in part on internal blacklisting, as opposed to mere defamation.  As to OPM, Liff alleged that the agency took steps to conclude all past, present, and future business, effectively disqualifying him from OPM-related work.  <u>See</u> Compl., ¶ 50.  At least some of OPM's actions are plausibly read as resting on purely internal decisions about his character and fitness: for example, it informed Liff that it would no longer request services under an ongoing task order even before it issued its (allegedly defamatory) report.  <u>See id.</u>, ¶ 47.

The claim against DOL similarly does not rest solely on defamation (although, as the Court acknowledged last time, the reed here is more slender).  <u>See Liff</u>, 156 F. Supp. 3d at 14.  Indeed, the DOL report that sparked much of this controversy included a footer that it was not meant "to be distributed outside of [the] agency."  Compl., ¶ 39; <u>see Kartseva</u>, 37 F.3d at 1530 (relying on "internal memorandum").  The Court thus previously described how DOL's internal dealings could nonetheless broadly preclude Plaintiff from public-sector consulting.  <u>See Liff</u>, 156 F. Supp. 3d at 15 (describing how report could "legally affect other government agencies or

private employers in their decisions whether to employ" him) (quoting <u>Kartseva</u>, 37 F.3d at

1530).  For instance, federal regulations require agencies to investigate contractors' dealings with

past agencies and obtain an affirmative finding of a satisfactory record, a practice that could spell

doom for Liff even if DOL did not actively spread its supposedly defamatory report.  <u>Id.</u> at 15-16

(citing 48 C.F.R. § 9.105-1(c)(5)) (finding dismissal unwarranted "[w]ith no additional

information from the government at this stage about how the communications at issue here

would factor in[]").  Plaintiff, moreover, paints a plausible picture that such broad preclusion

from government contracting actually happened, as other agencies' inquiries into his services

"essentially ended" and past agency contacts "stopped returning his calls."  Compl., ¶ 52.

Defendants may ultimately prove that <u>all</u> of these ill effects stemmed only from

defamatory speech, but that defense is of fact, not of pleading.  At this stage, Liff's Complaint

may be read as positing that internal decisions of various government actors functionally barred

him from public-sector consulting, leading to the loss of his liberty right to pursue his chosen

profession.  <u>See id.</u>, ¶¶ 58-60 (complaining of "acts and omissions," which resulted in "broad

preclusion of Plaintiffs from government contractor work").  As hard as this Court might try, it

thus cannot fit Liff's round stigma-plus peg (which, at times, involves no speech at all) into the

square defamation statute-of-limitations hole.  Liff's allegations, to the extent that they do not

rest solely on defamation, are therefore timely.

## IV.    Conclusion

For these reasons, the Court will grant in part and deny in part Defendants' Motion to

Reconsider.  A separate Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date:   <u>November 7, 2016</u>